|  |  |
|---|---|
| JOSEPH MINTER, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 311-087 |
| ) | |
| FNU YOUMAN, Lieutenant, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Dodge State Prison ("DSP") in Chester, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.[2]

---

[1] Plaintiff initially brought this case in the Middle District of Georgia. The case was later transferred to this Court because Plaintiff's allegations arise out of his confinement at DSP, which is located in this District. (Doc. no. 5.)

[2] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he is unable to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

I. SCREENING OF THE COMPLAINT

Plaintiff names Leiutenant Youman, a correctional officer at DSP, as the sole Defendant in this action. (Doc. no. 1, p. 1.) Plaintiff alleges that on June 14, 2011, Defendant Youman came into the laundry area where Plaintiff was working and stated to Tracy Johnson – an inmate at DSP – that he needed to have Plaintiff "dead before you leave here this morning. I have called Grogery Dees [another inmate at DSP] in here to help you kill him." (Id. at 7.) Plaintiff alleges that Defendant Youman stated that the medical department was told of the plan and was "waiting," and that "The cert" was on stand-by to help them "take [Plaintiff] out." (Id.)

Plaintiff further alleges that Defendant Youman then left the laundry area and returned with Plaintiff's medical file; Plaintiff asserts that the file contains a document dated September 9, 2007, authorizing Defendant Youman to offer inmates money to kill him. (Id. at 7, 9.) Plaintiff states that Ms. Ethridge, the Warden of Administration, showed his medical file to several inmates, including Tracy Johnson and Grogery Dees, who were present in the laundry area with Plaintiff and stated, "Now you[] all know and have seen so you[] all take care of this [] Minter before you leave here." (Id. at 7.) According to Plaintiff, Grogery Dees asked how much he would be paid, and Defendant Youman responded, "$500.00 each for you[] all." (Id. at 8.)

Plaintiff asserts that Defendant Youman's actions constitute "murder for hire." (Id. at 9.) He further asserts that on July 28, 2011, he requested the chief counselor, Mrs. Faque, to transfer him to another prison and explained that "Medical has stopped my medicine because I filed a grievance." (Id. at 4.) Plaintiff does not explain what medication he requires or explain what this medication is prescribed for, nor does he indicate that he has suffered harm as a result of being refused medication. He alleges that "Mrs. Faque boldly told [him] that there

2

is a murder for hire conspiracy here." (Id. at 4.) According to Plaintiff, she refused to transfer him and stated, "Since we are trying to kill you, why would we give you medication to help you stay alive[?] We don't have to give you anything[,] medicine or otherwise[,] to keep you alive another 5 years[.] [Y]ou were not suppose[d] to live here more than 2 week[s] anyway." (Id.) Plaintiff asserts that on August 9, 2011, he explained the situation to Warden Allen, who confirmed that Defendant Youman was trying to pay inmates to have him killed; however, Warden Allen told him "I will not go against my staff when they are following orders," and refused to transfer Plaintiff to another prison. (Id.) Plaintiff asserts that his further requests to be placed in protective custody or to be transferred have also been denied. (Id. at 6.) However, Plaintiff does not provide any information to indicate that any inmate or prison official has attempted to harm him in any way.

## II. DISCUSSION

The Court has a duty to construe *pro se* filings liberally, Haines, 404 U.S. at 520-21; however, the Court is in no way obligated to accept a complaint like the instant one, which brings an obviously frivolous claim. 28 U.S.C. § 1915A. In Carter v. Ingalls, 576 F. Supp. 834, 835-37 (S.D. Ga. 1983) (Bowen, J.), the Court considered a prisoner plaintiff's claims that, *inter alia*, he was given improper medication, blue ink and glass were placed in his brain, and prison officials created fake pictures of the plaintiff having sexual intercourse with a dog. The case was subject to *sua sponte* dismissal because of its "patent lack of merit and want of realistic chances of ultimate success." Id. at 836 (citing Jones v. Ault, 67 F.R.D. 124, 129 (S.D. Ga. 1974) (where inmate alleged that prison officials were using a thought-control machine)). The same holds true in this case.

3

First, Plaintiff provides no details that remotely suggest that he is in danger, whether from affirmative actions taken by other inmates, or from being denied medication. Second, Plaintiff's allegation that there is a prison-wide conspiracy to have him killed is simply not credible. Simply put, the Court does not believe Plaintiff's explanation that his medical file authorized Defendant Youman to hire inmates to kill him, that Defendant Youman walked into a room where Plaintiff was standing and declared his offer to have Plaintiff killed, and that other prison officials refused to transfer Plaintiff because they were involved in the murder for hire conspiracy. Whether Plaintiff is delusional, making a joke, or simply seeking to harass Defendant, his outlandish accusation will not circumvent the screening provision of 28 U.S.C. § 1915A.

### III. CONCLUSION

Simply put, a pauper's affidavit is not a free ticket to litigate frivolous claims. Ault, 67 F.R.D. at 127. The Court **REPORTS** and **RECOMMENDS** that this action be **DISMISSED** for frivolity.

SO ORDERED this 28th day of December, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

4